**UNITED STATES of America, Appellee,**

v.

**Leonard J. VANNELLI, Appellant.**

**No. 78–1607.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 8, 1979.

Decided March 12, 1979.

Rehearing and Rehearing En Banc
April 16, 1979.

Jay B. Kelly, St. Paul, Minn., for appellant.

Donald F. Paar, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., and Paul C. Engh and Robert L. Gjorvad, Legal Interns, on the brief.

Before STEPHENSON and McMILLIAN, Circuit Judges, and FILIPPINE, District Judge.*

STEPHENSON, Circuit Judge.

Appellant Leonard J. Vannelli appeals from his jury conviction on three counts of willfully attempting to evade federal income taxes by the filing of false income tax returns for the years 1971, 1972 and 1973 in violation of 26 U.S.C. § 7201.[1] The government reconstructed appellant's income through the use of the bank deposits-cash

---

* The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota, presiding, imposed a term of 18 months imprisonment.

expenditures method. Appellant in this appeal charges insufficiency of the evidence to establish willfulness and other trial errors. We affirm.

The government's investigation leading to the indictment in this case began when Special Agent Tschida interviewed appellant Vannelli at his home on May 1, 1974, with respect to why Vannelli had not filed federal income tax returns for the years 1971 and 1972. Prior to asking any questions of Vannelli, the special agent advised him of his rights.[2] Vannelli answered the agent's questions and later turned over relevant documents. Among other things, Vannelli told the agent that his 1971 and 1972 returns, along with his 1973 returns, had been recently filed and furnished the agent copies of the returns.

After verifying that Vannelli had filed his 1971 and 1972 returns, Agent Tschida checked the accuracy of his figures at the Cosmopolitan State Bank in Stillwater, where Vannelli maintained two checking accounts. Thereafter, a full scale investigation was conducted using the bank deposit-currency expenditure method of reconstructing income. The bank records revealed a large amount of loans being paid off with currency. In substance, there were more deposits and currency expenditures than money shown on the tax returns. As previously indicated, indictment, trial and conviction by the jury followed.

Initially Vannelli contends that it was incumbent upon the government to establish intent by evidence independent of the understatement of income. The thrust of Vannelli's contention is that any understatement of income was not willful on his part, but was due to Vannelli's reliance on

his income tax return preparer, Michael Fritz,[3] who made mistakes in preparing the tax returns. In this connection Vannelli points out that Fritz was also the head cashier at the Cosmopolitan Bank under whose supervision the relevant deposit slips were prepared. Fritz was thoroughly familiar with the deposit procedure whereby portions of Vannelli's deposits were used to pay current loans, and thus it was a mistake to just look at the bank statement, which reflected only the net deposit, and to use such deposit figures in determining gross receipts from Vannelli's vending machine business for income tax purposes.

Vannelli also sought to introduce a portion of a summary exhibit labeled "less items not subject to willful intent to evade income tax." The court ordered this portion of the exhibit deleted. Vannelli claims the court erred in doing so. The court correctly ruled that these conclusions concerning the effect of Fritz's mistakes could be argued to the jury as a reasonable inference to be drawn from the evidence. The court's ruling did not eliminate Vannelli's position but only restricted the form of presentation from one of testimony to one of argument. It was the jury's province to analyze and weigh this conclusion against other conclusions which could be inferred from the evidence.

■ The issue of Vannelli's reliance on Fritz's preparation of the tax returns was properly submitted to the jury. *United States v. Venditti*, 533 F.2d 217, 219 (5th Cir. 1976). The court instructed thereon as follows:

If the defendant provided Michael Fritz with full information with regard to

---

2. Agent Tschida testified at the suppression hearing that prior to questioning Vannelli he advised Vannelli that he was a special agent and read the following statement:

As a Special Agent one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws and related offenses. And in connection with my investigation of your tax liability, I would like to ask you some questions. However, first I advise you that under the Fifth Amendment to the Constitution of the United States, I

cannot compel you to answer any questions or submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you say, any documents which you submit may be used against you in any criminal proceeding which may be undertaken by the United States. I advise you further that you may, if you wish, seek the assistance of an attorney before responding.

3. Vannelli and Fritz are first cousins.

his taxable income and his expenses, and the defendant then adopted, signed, and filed the tax return as prepared by Michael Fritz, without having reason to believe that it was not correct, then you must find the defendant not guilty.

If on the other hand you find beyond a reasonable doubt that the defendant did not provide full and complete information to Mr. Fritz, or that he knew that the return as prepared by Michael Fritz was not correct, and substantially understated the tax liability of the defendant and his wife, then you may find the defendant guilty even though he did not prepare the return himself but rather had it prepared for him by another person.

In addition, the court properly submitted the issue of willfulness to the jury. *See United States v. Pomponio,* 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976); *United States v. Olson,* 576 F.2d 1267, 1272 (8th Cir. 1978); *United States v. Pohlman,* 522 F.2d 974 (8th Cir. 1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976). No error is urged with respect to the willfulness instruction.

■ After reviewing the record, we are satisfied that the evidence amply supports the jury finding beyond a reasonable doubt that Vannelli willfully attempted to evade and defeat income tax due the government in a substantial amount as charged in the indictment.

The evidence taken most favorably to the jury verdict discloses that for each of the years 1971, 1972 and 1973, the amounts of deposits far exceeded the income reported. In 1971 Mr. Vannelli reported $14,746.69 in income, yet his deposits minus legitimate non-income receipts and expenditures totaled $27,640.12. The tax due on the latter amount was at least $6,173.00, and Mr. Vannelli paid only $2,946.67. In 1972 Mr. Vannelli reported income of $3,742.59 and paid a total tax of $576.24. His true income according to the bank deposits method was about $25,765.97. His total tax due was $5,994.50. In 1973 Mr. Vannelli reported $25,904.83 and paid a tax thereon of $5,736.21. His true income was $57,160.62 and the tax, $17,728.04.[4]

■ Willfulness in a criminal tax case may be established by a consistent pattern of not reporting large amounts of income. *See Holland v. United States,* 348 U.S. 121, 131, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. DiBenedetto,* 542 F.2d 490, 493 (8th Cir. 1976); *United States v. Coblentz,* 453 F.2d 503, 505 (2d Cir. 1972).

■ Vannelli next urges that the trial court committed reversible error in admitting evidence of Vannelli's prior misdemeanor convictions[5] of misappropriation of funds in excess of one dollar derived from the bingo games which he ostensibly operated for St. Andrew's Special Fund (September 29, 1972, to August 31, 1973); Fraternal Order of Eagles Athletic Fund (July 31, 1972, to November 1, 1973); Como Orchard Boosters (February 3, 1973, to November 17, 1973). Vannelli contends the prejudice created far outweighed any probative value of this evidence. The government contends the evidence was properly admitted and used only to show an intent, opportunity, plan or scheme as it related to the federal prosecution for tax evasion. In a tax eva-

---

4. During the relevant period Vannelli owned a vending machine route which operated primarily in cash, and also ran local bingo games, which were also cash operations. Checks made out to cash were accepted as game fees. The checks were taken by Vannelli to the Cosmopolitan State Bank, where, with the aid of Fritz, Vannelli exchanged the checks for cash and the money was applied to personal loan payments. The checks were unendorsed at the time of deposit, although for his own purposes Fritz identified the checks by placing the initials "LV" on the back thereof. These checks constituted the principal disparity between Vannelli's total deposits and his reported income.

5. After the court ruled it would admit the evidence of the convictions, the parties stipulated as to Vannelli's conviction record. The court promptly instructed the jury that this evidence was "not for the purpose of proving that the defendant acted in conformity therewith or with that offense, but for the purpose, such as you may feel it bears as proof of motive, opportunity, intent, plan or absence of mistake or accident; and for those limited purposes * *."

sion prosecution it is necessary to show that an individual received more income than he reported. In order to do this, the government must establish potential sources from which this unreported income was derived. In this case the only purpose for introducing the previous conviction of appellant was to show an intent, opportunity, scheme or plan from which unreported income could be derived.[6] *See* Fed.R.Evid. 404(b). The trial court is in better position to determine whether the probative value of the evidence in question is substantially outweighed by the danger of unfair prejudice. *See* Fed.R. Evid. 403. Here it was essential for the government to show a potential source of unreported income and Vannelli's handling of the receipts in connection therewith. Embezzled or other unlawfully obtained funds are, of course, taxable income. *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). We cannot say the trial court abused its discretion in admitting this evidence under the particular circumstances of this case.

■ Appellant next urges that the trial court erred in refusing to dismiss the indictment because of an abuse in prosecutorial discretion under the *Petite* policy. *See Petite v. United States*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). Under the *Petite* policy the Department of Justice declines to bring a federal prosecution after a state prosecution unless the reasons for the successive federal prosecution are compelling. In the state prosecution Vannelli was convicted of unlawfully appropriating money and unlawfully hiring persons to assist him in the operation of bingo games. Prosecution in this case involves the willful and knowing attempt to evade federal income taxes. The charges are completely dissimilar. In any event, the tax prosecution was approved by the Department of Justice for obvious compelling reasons. *See United States v. Wallace*, 578 F.2d 735, 740 (8th Cir. 1978).

**6.** The unendorsed bingo checks constituted the principal disparity between Vannelli's total deposits and his reported income.

Vannelli contends that the trial court erred in denying his motion to suppress records and other documents obtained from him during the investigation on the grounds that such evidence was obtained in violation of the Fourth and Fifth Amendments. Vannelli concedes that on May 1, 1974, Agent Tschida read appellant his constitutional rights[7] but points out that immediately thereafter the agent asked Vannelli whether he had filed his income tax returns. Thus, Vannelli argues, he was consciously misled into believing that that was the focus of the investigation and therefore the information and documents obtained without further warning by the agent in subsequent interviews were obtained under coercion, fraud and trickery and should have been suppressed.

■ Statements made by a taxpayer to Internal Revenue agents during the course of a noncustodial interview in a criminal tax investigation are admissible even though taxpayer was not given the warnings required by *Miranda*. *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); *United States v. MacLeod*, 436 F.2d 947 (8th Cir. 1971). The Supreme Court in *Beckwith v. United States, supra*, 425 U.S. at 347–48, 96 S.Ct. at 1617, recognized

that noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where "the behavior of . . . law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined. . . ." * * * When such a claim is raised, it is the duty of an appellate court, including this Court, "to examine the entire record and make an independent determination of the ultimate issue of voluntariness." * * * Proof that some kind of warnings were given or that none were given would be relevant evidence only on the issue of whether the questioning was in fact coercive. [Citations omitted.]

**7.** *See* note 2, *supra*.

In the present case our examination of the record fails to disclose that Vannelli was misled by Agent Tschida during the interviews. When Agent Tschida gave his initial warnings, he explicitly mentioned the possibility of criminal charges. We are satisfied that Vannelli's actions were voluntary and the trial court did not err in denying the motion to suppress.

Appellant next makes numerous claims of error on the part of the trial court which are captioned in his brief, "The trial court's exclusion of evidence and limitations placed on appellant's right to cross-examine certain witnesses constitutes reversible error." We have examined appellant's contentions and are satisfied that appellant has failed to demonstrate prejudicial error or abuse of discretion with respect to the various evidentiary rulings made by the trial court. One item stressed by appellant in oral argument and in his brief will be mentioned. Appellant sought to elicit from witness Fritz information as to what appellant had told him with respect to the bingo checks having been exchanged at the St. Paul Tobacco and Candy Company prior to their exchange at the Cosmopolitan Bank. Appellant claimed he was offering this not as proof of the fact asserted but merely to show that Vannelli had given this information to Fritz. The court properly ruled that it was hearsay. Obviously Vannelli was seeking to prove that the deposits at the Cosmopolitan Bank were loan proceeds from the St. Paul Tobacco and Candy Company and not bingo proceeds. Such testimony was hearsay and was not admissible under any exceptions to the hearsay rule. Appellant then sought to introduce similar evidence by questioning Agent Tschida with respect to statements made by Fritz. The court properly excluded this testimony as hearsay.

Appellant claims the court erred in refusing to allow evidence of a prior misdemeanor conviction of witness George Maser in connection with the bingo games. It was properly excluded. *See United States v. Harvey*, 588 F.2d 1201, at 1203 (8th Cir. 1978); Fed.R.Evid. 608(b), 609(a).

Finally, appellant urges that the court erred in not granting a new trial because one of the jurors a few days after the trial delivered a written note to the court wherein she sought to impeach her verdict. In substance, she stated that "I feel I made the wrong decision on the Leonard J. Vannelli case." At the time the jury returned its verdict of guilty on all three counts, each juror was polled and each assented to the verdict. The general rule is that jurors may not impeach their verdict. *United States v. Schroeder*, 433 F.2d 846, 851 (8th Cir. 1970), *cert. denied sub nom., Allen v. United States*, 400 U.S. 1024, 91 S.Ct. 590, 27 L.Ed.2d 636 (1971); Fed.R. Evid. 606(b). Under the circumstances of this case the verdict must stand.

Affirmed.